IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

Case No. 20-CV-3260

SERGIO ALMANZA,
    Plaintiff,

v.

BNSF RAILWAY COMPANY d/b/a
BURLINGTON NORTHERN SANTA FE
RAILWAY COMPANY, a corporation,
    Defendant.

## COMPLAINT AND REQUEST FOR JURY TRIAL

NOW COMES the Plaintiff, SERGIO ALMANZA, by and through his attorneys, KENT M. LUCACCIONI, LTD., and complaining of the Defendant BNSF RAILWAY COMPANY d/b/a BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, a corporation, states as follows:

### NATURE OF ACTION

1. This case arises under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 as a consequence of a left anterior cerebral artery ischemic stroke suffered by Plaintiff Sergio Almanza (hereinafter "ALMANZA") on or about May 20, 2019 due in whole or in part to the negligence of the Defendant BNSF Railway Company d/b/a Burlington Northern Santa Fe Railway Company (hereinafter "BNSF").

### THE PARTIES

2. At all time relevant hereto, ALMANZA is and was a citizen and resident of the State of Illinois and Unites States of America.

3. At all times relevant hereto, Defendant BNSF is and was doing business in the County of Denver and State of Colorado, including at the Denver Intermodal Facility, 585 West 53rd Place, Denver, CO 80216

1

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to 45 U.S.C. § 56 and 28 U.S.C. § 1331.

5. The negligence alleged herein was committed in the County of Denver and State of Colorado where a substantial part of the events giving rise to the claim occurred and consequently venue in this judicial district is proper pursuant to 45 U.S.C. § 56 and 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

6. In approximately 2002, ALMANZA began working for Rail Terminal Services at Defendant BNSF's Corwith Yard in Chicago, Illinois and his work duties included crane operator, spotter and groundman.

7. In approximately 2011, Rail Terminal Services' contract for services with the Defendant BNSF was terminated and ALMANZA and other workers were hired by the Defendant BNSF.

8. During the course of the hiring process by Defendant BNSF in 2011, the Defendant BNSF voluntarily undertook to require overweight applicants and workers to lose weight and required medical examinations because the Defendant BNSF knew, or reasonably should have known, that overweight employees were more susceptible, in part, to the development of hypertension, diabetes, high cholesterol and other conditions which could make workers more susceptible to strokes and other conditions of ill being.

9. At all times relevant hereto, Defendant BNSF was and is now engaged in the business of a common carrier by railroad in interstate commerce in the County of Denver and State of Colorado.

10. At all times relevant hereto, ALMANZA was employed by the Defendant BNSF and his duties were in furtherance of, and directly or closely or substantially affected interstate commerce.

11. The injuries sustained by ALMANZA arose as a result of and in the course of his

employment with the Defendant BNSF.

12. At all times relevant hereto, ALMANZA was employed by the Defendant BNSF as a crane operator, spotter and groundman.

13. At all times relevant hereto, ALMANZA was acting within the scope of his employment with and at the direction of Defendant BNSF through its agents and employees.

14. At all relevant times alleged herein, both ALMANZA and the Defendant BNSF were subject to an Act of Congress commonly known as the Federal Employers' Liability Act (hereinafter "FELA"), 45 U.S.C. §§ 51, *et seq.*

15. At all relevant times alleged herein, the FELA provided, in relevant part, that

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, . . . due to its negligence, . . . in its . . . works . . . .
>
> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

45 U.S.C. § 51.

16. Prior to May 15, 2019, ALMANZA was directed by Defendant BNSF to travel from Corwith Yard in Chicago, Illinois to the Denver Intermodal Facility (585 West 53rd Place, Denver, CO 80216) to assist with yard operations, including driving a spotter/hostler truck to help load and unload trailers for outbound and inbound trains.

17. Prior to May 15, 2019, ALMANZA had a history of hypertension, high cholesterol, diabetes and obesity which were preexisting conditions that made him more susceptible to stroke.

18. Prior to May 15, 2019, the Defendant BNSF, by and through its employees and

3

agents, knew or reasonably should have known, that ALMANZA had a history of hypertension, high cholesterol and diabetes.

19.     Prior to May 15, 2019, the Defendant BNSF, by and through its employees and agents, knew or reasonably should have known that ALMANZA was extremely obese.

20.     Prior to May 15, 2019, the Defendant BNSF, by and through its employees and agents, knew or reasonably should have known that ALMANZA'S pre-existing conditions increased his risk of stroke.

21.     ALMANZA arrived in Denver, Colorado on May 15, 2019 via a flight paid for by the Defendant BNSF and worked approximately 10 to 12 hour days continuously from May 16-18, 2019 helping to unload and load trailers from and to trains at the direction of Defendant BNSF, by and through its agents and employees.

22.     Prior to May 15, 2019 and thereafter on May 16-18, 2019, the Defendant BNSF, by and through its employees and agents, knew or reasonably should have known, that the Denver Intermodal Facility was understaffed and that the work assigned to ALMANZA was overwhelming, chaotic, non-stop, and very busy, and that it was difficult for ALMANZA to keep up with the tempo of the work being performed at the Denver Intermodal Facility.

23.     From May 16-18, 2019, notwithstanding that ALMANZA was doing his level best to perform his work safely and efficiently, Defendant BNSF, by and through its supervisory agents and employees, would repeatedly radio him throughout the course of his work demanding to know where ALMANZA was located in the yard and accusing him of taking too long to perform his work.

24.     From May 16-18, 2019, Defendant BNSF, by and through its supervisory agents and employees, was pushing ALMANZA in an unreasonable fashion to perform his work at a faster rate resulting in significant and tremendous out of the ordinary stress throughout May 16-18, 2019, and significant lethargy at the end of each day.

25.     From May 16-18, 2019, the conditions ALMANZA was required to work under were

significantly in excess of "too much work" and constituted an unreasonably stressful and dangerous work environment in light of his pre-existing conditions and disabilities.

26. Prior to May 15, 2019, the Defendant BNSF, by and through its employees and agents, knew or reasonably should have known, that the work conditions at the Denver Intermodal Facility would further exacerbate ALMANZA's pre-existing conditions and further increase his risk of stroke or other injury.

27. Prior to May 15, 2019, the Defendant BNSF, by and through its employees and agents, knew or reasonably should have known that the work conditions at the Denver Intermodal Facility described herein would increase the risk of injury or ill being to ALMANZA regardless of its knowledge of his pre-existing conditions.

28. On May 19, 2019, ALMANZA again reported to work with severe pain in his right leg and advised his supervisor that he was going to the emergency room where his blood pressure was noted to be 210/125 due in whole or in part to the negligence of the Defendant BNSF.

29. On May 19, 2019, ALMANZA was discharged from the emergency room the same day with pain and muscle relaxer medications and returned to his hotel room paid for by Defendant BNSF and where he was required or implicitly required to stay by Defendant BNSF during the course of his duties for Defendant BNSF.

30. On May 20, 2019 in the early morning, Defendant BNSF, by and through its supervisors, agents and employees, knew that ALMANZA was in a condition of ill health so as to render himself helpless to obtain needed medical attention or assistance for himself.

31. On May 20, 2019 in the early morning, Defendant BNSF, by and through its supervisors, agents and employees, knew or had reason to know that ALMANZA had been stricken with a condition of serious ill health.

32. On May 20, 2019, Defendant BNSF delayed obtaining medical attention or assistance for ALMANZA until the afternoon when ALMANZA was experiencing signs and symptoms of an

5

ischemic stroke.

33. At all time relevant hereto, pursuant to the FELA, the Defendant BNSF, by and through its employees and agents, owed a non-delegable duty to ALMANZA to provide him with a reasonably safe place to work, to not aggravate known pre-existing conditions or disabilities in an employee by assigning him to work which might aggravate his pre-existing conditions or disabilities, to assign him to work to which he was reasonably suited, to provide sufficient manpower to properly and safely perform the work, and to render medical assistance when it knew or should have known that he was incapacitated and needed medical assistance to prevent further serious injury.

34. Prior to and after March 15, 2019, the Defendant BNSF, by and through its employees and agents, violated the FELA and was careless and negligent in one or more of the following respects:

  a. Failed to provide sufficient manpower to safely perform the work at the Denver Intermodal Terminal;

  b. Aggravated ALMANZA's preexisting medical conditions by assigning him to work which it knew could or might aggravate those conditions;

  c. Assigned him to excessive work duties to which he was not reasonably suited;

  d. Required him to perform work beyond his capability and aggravated his hypertension and diabetes;

  e. Assigned ALMANZA to work at the Denver Intermodal Facility with knowledge that it involved an unreasonably strenuous and abnormally stressful work environment, and exposed him to an unreasonable risk of harm;

  f. Failed to continue to monitor his weight after it voluntarily agreed to do so when ALMANZA was initially hired in 2011;

  g. Failed to implement and enforce its own Safety Rules;

  h. Failed to comply with its own Safety Rules;

  i. Failed to educate ALMANZA about the dangers and risk factors associated with morbid obesity in relation to his work duties;

    j.    Created and permitted a work environment that was understaffed, overwhelming, chaotic, non-stop, and very busy, and resulted in unreasonably dangerous stress developing in ALMANZA;

    k.    Improperly managing the work by excessively radioing ALMANZA repeatedly from May 16-18, 2019 demanding to know where ALMANZA was located in the yard, accusing him of taking too long to perform his work, and pushing him in an unreasonable fashion to perform his work at a faster rate resulting in a significant and tremendous out of the ordinary stress throughout the days, and significant lethargy at the end of each day; and

    l.    Failed to render medical assistance when it knew or should have known that he was incapacitated and needed medical assistance to prevent further serious injury.

35.    As a proximate result, in whole or in part, of one or more of the foregoing careless and negligent acts or omissions of the Defendant BNSF, by and through its employees and agents, ALMANZA was caused to sustain injuries, including an anterior cerebral artery ischemic stroke, seizures and other associated consequences, undergo extensive care, treatment, rehabilitation and diagnostic tests, and ALMANZA has incurred medical expenses, sustained wage loss and an impaired earning capacity, sustained fringe benefits loss, and experienced and will continue to experience pain, suffering, disability, and loss of a normal life.

WHEREFORE the Plaintiff SERGIO ALMANZA, prays for entry of judgment against the Defendant BNSF RAILWAY COMPANY d/b/a BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, in an amount sufficient to compensate him for his general damages, together with his special damages as may hereinafter be ascertained, plus costs, post-judgment interest and whatever other relief this Honorable Court deems just and proper.

Respectfully submitted this 2nd day of November 2020,

KENT M. LUCACCIONI, LTD.

By: /s Kent M. Lucaccioni
Kent M. Lucaccioni (IL Bar No. 6197689)
Vincent B. Browne (IL Bar No. 6242593)
Kent M. Lucaccioni, Ltd.
20 South Clark Street, Suite 1700
Chicago, IL 60603
T: (312) 425-0401
F: (312) 263-0128
Email: team@kmlltdlaw.com